# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ANDREW QUINONES,**                          Case No. 1:18 CV 1492

      Petitioner,                              Judge Jeffrey J. Helmick

      v.                                       Magistrate Judge James R. Knepp II

**WARDEN DAVID GRAY,**

      Respondent.                              **REPORT AND RECOMMENDATION**

## INTRODUCTION

Petitioner Andrew Quinones ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent David Gray, Warden of the Belmont Correctional institution in St. Clairsville, Ohio ("Respondent") filed an Answer (Doc. 7) and Petitioner filed a Reply (Doc. 10). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated July 12, 2018). For the reasons discussed below, the undersigned recommends the Petition be denied.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Eighth District Court of Appeals made the following factual findings on direct appeal:

{¶ 6} In March 2004, Heather H. became romantically involved with appellant. Shortly thereafter, Heather learned that she was pregnant with appellant's child. On May 24, 2004, Heather and appellant married. During Heather's pregnancy, appellant was in the military and stationed in Pensacola, Florida while Heather remained in Ohio.

{¶ 7} In September 2004, appellant returned to Ohio, without permission from his superiors, when he learned that Heather was experiencing medical complications due to her pregnancy. Appellant moved in with Heather and her family in order to care for Heather during the remainder of her pregnancy. At the time, Heather lived with her mother Helen, her 10–year–old sister S.H., and her 11–year–old brother W.H.

{¶ 8} On January 10, 2005, Heather and appellant's daughter, A.Q., was born. After A.Q.'s birth, appellant returned to Pensacola, Florida, where he was punished for his unauthorized absence and ultimately discharged from the military. When appellant returned to Ohio, he permanently moved into Helen's residence.

{¶ 9} While appellant was living in Helen's household, Helen had a job with a municipal clerk of courts office. Additionally, Heather worked at a local drug store. Consequently, S.H. and W.H. were often left at home alone with appellant, and he became the authority figure in the household.

{¶ 10} S.H. testified that when she was between the ages of nine and ten, appellant began sexually abusing her. According to S.H., the abuse began with a kiss and escalated into appellant instructing her to "touch his penis," inappropriately touching her, and directing her to perform oral sex. S.H. testified that appellant's requests became more frequent and aggressive. On a specific occasion, appellant forced her to perform oral sex by pulling her elbows together and pushing her head down. S.H. testified that on a number of occasions, he took her down to the basement and forced her to have anal sex. S.H. explained that she complied with appellant's directions because she felt that she had to obey him or she would be punished. S.H. stated that the abuse ended when she moved to Crawford County with her mother and brother in the fall of 2005.

{¶ 11} S.H. testified that as she became older and fully grasped what had been done to her, she became depressed and suicidal. S.H. stated that she was concerned appellant would sexually abuse A.Q.

{¶ 12} When S.H. was approximately 16 years old, she was participating in a junior varsity basketball practice when she reacted negatively to a comment one of her teammates made and "stormed out of the gym in a rage." Her coach, Jen Meyer, followed S.H. into the locker room. Meyer testified that when she asked S.H. what was bothering her, S.H. responded that "there were things that happened at home that weren't good." Meyer testified that she encouraged S.H. to meet with the school's guidance counselor, Tena Eyster.

2

{¶ 13} After several meetings with Eyster, S.H. disclosed that she had been "molested by a family member" when she was younger and living in Cleveland. According to Eyster, S.H. conveyed the information in a very "matter of fact" manner and stated that "there was oral sex and penetration." Following this conversation, Eyster contacted Crawford County Children and Family Services. Eyster also contacted S.H.'s mother, Helen, and set up a meeting where S.H. told her mother about the abuse.

{¶ 14} Devon Sipes Ruiz, a case worker for Crawford County Children and Family Services, testified that she was assigned to perform an assessment of S.H. Ruiz testified that once she confirmed that S.H. was no longer residing in the home with appellant, she contacted law enforcement and made them aware of the allegations. Thereafter, Ruiz conducted an interview of S.H. where S.H. described some specific details of her sexual abuse. Ruiz testified that she subsequently sent a copy of her assessment to the Newburgh Heights Police Department.

{¶ 15} Detective Brian O'Connell of the Newburgh Heights Police Department was assigned to investigate the sexual assault of S.H. Det. O'Connell testified that following his receipt of case worker Ruiz's assessment, he contacted Helen and asked to meet S.H. Det. O'Connell stated that he and a representative of the Cleveland Rape Crisis Center conducted an interview with S.H. Det. O'Connell testified that although "her statements were somewhat vague on dates and times," S.H. was able to explain and

> articulate that there were multiple instances that began to happen, instances being that of kissing, then progressed on to fondling of genitalia—[appellant]'s genitalia with her hand, him fondling S.H. with his hands. Then it progressed to oral sex, * * * as well as then progressing to what [S.H.] stated herself as sodomy and anal sex.

Following his interview of S.H., Det. O'Connell conducted a non-custodial interview of appellant. Det. O'Connell described appellant as "evasive" and "physically uptight."

*State v. Quinones*, 2014 WL 7186212, at *1-2 (Ohio Ct. App.) ("*Quinones I*").

## PROCEDURAL HISTORY

<u>State Court Conviction</u>

In April 2013, a Cuyahoga County grand jury indicted Petitioner on one count of gross sexual imposition on a child under age thirteen, four counts of kidnapping (with sexual motivation specifications), three counts of rape of a child under age thirteen, and one count of pandering

3

obscenity involving a minor. (Ex. 1, Doc. 7-1, at 6-10).[1] Petitioner was appointed counsel and pleaded not guilty. (Ex. 3, Doc. 7-1, at 15).

The case proceeded to a jury trial, which resulted in a hung jury on May 13, 2013. (Ex. 4, Doc. 7-1, at 16). Petitioner's appointed counsel was permitted to withdraw, and the trial court appointed new counsel. (Ex. 5, Doc. 7-1 at 17). Petitioner subsequently retained attorney John Frenden. *See* Tr. Vol. 6, at 981, Doc. 7-2, at 4.

On November 18, 2013, Petitioner executed a jury trial waiver, electing to have his case tried to the bench. (Exs. 6-7, Doc. 7-1, at 18-19); *see also* Tr. Vol. 6, at 981-84, Doc. 7-2, at 4-7. The trial began the following day. *See* Tr. Vol. 6, at 986, Doc. 7-2, at 9.[2] At the close of the State's case, Petitioner moved for acquittal. (Tr. Vol. 7, at 1321-29, Doc. 7-3, at 149-57).[3] Petitioner later renewed that motion at the end of trial. (Ex. 8, Doc. 7-1, at 20-21). Petitioner also filed specific objections to a transcript of a police interview of himself. (Ex. 9, Doc. 7-1, at 22-32).

On December 2, 2013, the trial judge found Petitioner guilty of gross sexual imposition, four counts of kidnapping (with sexual motivation specifications), and three counts of rape. (Ex. 10, Doc. 7-1, at 33).[4] Petitioner (Ex. 12, Doc. 7-1, at 43-46) and the State (Ex. 11, Doc. 7-1, at 34-42) filed sentencing memoranda. On December 30, 2013, the court sentenced Petitioner to ten years to life in prison for kidnapping with a sexual motivation specification, five years in prison

---

1. The State subsequently moved to amend the indictment to change the date ranges for Count 8 (kidnapping), and Count 9 (pandering obscenity involving a minor). (Ex. 2, Doc. 7-1, at 11-14).
2. The case was reassigned to a different judge than heard the first trial. *See* Tr. Vol. 6, at 981, Doc. 7-2, at 4.
3. Counsel originally called the motion one "notwithstanding the verdict", but agreed when the Court asked if he meant a motion for acquittal under Criminal Rule 29. (Tr. Vol. 7, at 1321-27, Doc. 7-3, at 149)
4. This record also reflects that Count 9 – pandering sexual material involving a minor – was dismissed before trial. (Ex. 10, Doc. 7-1, at 33).

for gross sexual imposition, and ten years in prison for each rape conviction. (Ex. 13, Doc. 7-1, at 47). All sentences were to be served concurrently. *Id.*

The following day, a motion for a new trial was filed by "Christy Harry, on the behalf of Andrew Quinones" arguing Petitioner's trial counsel was ineffective. (Ex. 14, Doc. 7-1, at 49-50). The trial court denied the motion on January 6, 2014. (Ex. 15, Doc. 7-1, at 51).

Direct Appeal

Through new counsel, Petitioner filed a timely notice of appeal to the Ohio Eighth District Court of Appeals. (Ex. 16, Doc. 7-1, at 52-53). In his brief, Petitioner raised a single assignment of error: "Defendant was denied the effective assistance of counsel, in violation of his rights as protected by the Sixth Amendment to the U.S. Constitution." (Ex. 17, Doc. 7-1, at 60-83). The State filed a brief in opposition (Ex. 18, Doc. 7-1, at 86-107), and Petitioner filed a Reply (Ex. 19, Doc. 7-1, at 109-18).

On December 18, 2014, the appellate court affirmed Petitioner's convictions. (Ex. 20, Doc. 7-1, at 119-30); *Quinones I*, 2014 WL 7186212.[5]

On February 2, 2015, Petitioner filed a timely notice of appeal with the Ohio Supreme Court. (Ex. 23, Doc. 7-1, at 134-35). In his memorandum in support of jurisdiction, he raised a single proposition of law:

> Where defense counsel's performance is so completely deficient that the trial loses its character as a confrontation between adversaries, and defense counsel does not subject the state's case to meaningful adversarial testing, the defendant is entitled to a new trial.

_____

5. Prior to its decision affirming Petitioner's conviction, in August 2014, the appellate court *sua sponte* remanded the case to the trial court for the limited purpose of correcting the record "to have the trial court's sentencing journal entry reflect the disposition of counts 2, 4, 6, and 7. It appears they merged into allied offenses of similar import for purposes of sentencing, but the journal entry does not expressly reflect this disposition." (Ex. 21, Doc. 7-1, at 131). The trial court complied. (Ex. 22, Doc. 7-1, at 132-33).

(Ex. 24, Doc. 7-1, at 136-51). The State filed a memorandum in opposition (Ex. 25, Doc. 7-1, at 161-75). On July 22, 2015, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal pursuant to Supreme Court Practice Rule 7.08(B)(4). (Ex. 26, Doc. 7-1, at 176).

Post-Conviction Petition

On August 29, 2014 – while his direct appeal was still pending – Petitioner filed a petition for post-conviction relief with the trial court. (Ex. 27, Doc. 7-1, at 178-96). Therein, he argued his trial counsel was ineffective because his defense was based on a misunderstanding of the law, he did not object to testimony by a police officer commenting on Petitioner's credibility, he elicited testimony that bolstered the credibility of the victim's testimony, and he failed to prepare Petitioner for his own testimony and failed to prepare for voir dire. *See id.* Petitioner attached an affidavit in which he stated that counsel advised him to waive a jury trial based on the judge assigned to the case. *Id.* at 197. The affidavit also stated that after a different judge was assigned, counsel "nonetheless insisted on going forward with a bench trial" because "he had not prepared for voir dire." *Id.* at 197-98. He stated he "would not have agreed to waive the jury had Mr. Frenden been prepared to conduct a voir dire." *Id.*at 198. The State filed a brief in opposition, arguing the post-conviction petition was barred by *res judicata*. (Ex. 28, Doc. 7-1, at 200-25). Petitioner filed a response. (Ex. 29, Doc. 7-1, at 227-31). On April 6, 2015, the trial court summarily denied Petitioner's motion for post-conviction relief. (Ex. 30, Doc. 7-1, at 232).

Petitioner filed a timely notice of appeal. (Ex. 31, Doc. 7-1, at 234). In his appellate brief, he raised one assignment of error:

> The trial court erred when it summarily denied the Petitioner's request for post-conviction relief because the Petitioner demonstrated a genuine issue of material fact and *res judicata* did not bar his claims.

(Ex. 32, Doc. 7-1, at 242-60). The State filed a responsive brief. (Ex. 33, Doc. 7-1, at 262-76). On November 17, 2015, the appellate court dismissed Petitioner's appeal for lack of a final, appealable order, explaining that the court lacked jurisdiction "because the trial court failed to issue findings of fact and conclusions of law as required by R.C. 2953.21 when it denied appellant's timely filed petition for post-conviction relief." (Ex. 34, Doc. 7-1, at 278).

The State then filed proposed findings of fact and conclusions of law (Ex. 35, Doc. 7-1, at 280-88), which the trial court adopted in their entirety (Exs. 36-37, Doc. 7-1, at 289-96). Petitioner again filed a timely notice of appeal (Ex. 38, Doc. 7-1, at 298), and raised the same assignment of error in his brief:

> The trial court erred when it summarily denied the Petitioner's request for post-conviction relief because the Petitioner demonstrated a genuine issue of material fact and *res judicata* did not bar his claims.

(Ex. 39, Doc. 7-1, at 310-28). The State filed a brief in response. (Ex. 40, Doc. 7-1, at 330-45).

On October 6, 2016, the appellate court affirmed the judgment of the trial court. (Ex. 41, Doc. 7-1, at 346-56); *State v. Quinones*, 2016 WL 5888174 (Ohio Ct. App.) ("*Quinones II*").

Petitioner filed a timely notice of appeal to the Ohio Supreme Court (Ex. 42, Doc. 7-1, at 357-58), and a memorandum in support of jurisdiction raising a single proposition of law:

> A Sixth Amendment claim alleging ineffective assistance of trial counsel is not barred by *res judicata* if, on collateral review, it is supported by new evidence previously outside the record and unavailable for presentation on direct appeal.

(Ex. 43, Doc. 7-1, at 359-73). The State filed a responsive brief. (Ex. 44, Doc. 7-1, at 385-97). On July 5, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4). (Ex. 45, Doc. 7-1, at 398).

## FEDERAL HABEAS CORPUS

Petitioner raises a single ground for relief in his Petition before this Court:

> Trial counsel's incompetent performance on Mr. Quinones' behalf was substandard, was reasonably likely to have compromised the outcome of his case, and violated his right to effective assistance of counsel provided under the Constitution's Sixth Amendment.

(Doc. 1, at 6); *see also* Doc. 1-1 (memorandum in support). Respondent filed an Answer (Doc. 7) and Petitioner filed a Reply (Doc. 10).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### DISCUSSION

In his single ground for relief, Petitioner contends that his trial counsel provided ineffective assistance in multiple ways: 1) his strategy and tactics were poor, specifically that his defense was based on a misunderstanding of the law and that he offered evidence that bolstered the State's case; 2) he failed to object to inadmissible and prejudicial evidence; and 3) he failed to prepare for trial, including failing to prepare for voir dire, which resulted in Petitioner unwillingly opting for a bench trial rather than a jury trial. *See* Doc. 1-1.[6] Respondent contends that the first two sub-parts of this claim are meritless (on AEDPA review) and the third part is procedurally defaulted. *See* Doc. 7. For the reasons discussed below, the undersigned recommends the Petition be denied.

Procedural Default

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel,*

---

6. Petitioner also points out (without specific argument as to its relevance) that his trial counsel has since been disbarred. (Doc. 10, at 1 n.1) (citing *Cleveland Metro. Bar Ass'n v. Frenden*, 149 Ohio St. 3d 548 (2016)); *see also* Doc. 1-1, at 3. But Petitioner does not argue that Frenden was disbarred for any action taken in *Petitioner's* case and has thus not shown the disbarment to be germane as the relevant point of inquiry is counsel's conduct during Petitioner's trial. *See United States v. Mitchell*, 216 F.3d 1126, 1132 (D.C. Cir. 2000) (no ineffective assistance of counsel for unrelated bar disciplinary matters); *United States v. Ross*, 338 F.3d 1054, 1056-57 (9th Cir. 2003) (per curiam) ("To prove ineffective assistance, defendants [whose lawyers were suspended or disbarred] (like everyone else) had to identify 'actual errors and omissions by counsel that a conscientious advocate would not have made,' and show that they suffered prejudice from those errors.") (quoting *United States v. Mouzin*, 785 F.2d 682, 696 (9th Cir. 1986)). !

526 U.S. 838, 842 (1999). The doctrine of exhaustion "requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also Williams v. Wolfenberger*, 513 F. App'x 466, 468 (6th Cir. 2013).

A petitioner can procedurally default a claim in two ways. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, he may fail "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* The Sixth Circuit applies a four-part test to determine whether a claim has been procedurally defaulted in this way: 1) whether there is a state procedural rule applicable to the petitioner's claim, with which he has failed to comply; 2) whether the state courts actually enforced the state procedural sanction; 3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and 4) if prongs one through three are satisfied, whether the petitioner has demonstrated cause for his failure to comply and actual prejudice resulting from the constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009). Second, a petitioner may default by failing "to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (internal citations and quotation marks omitted); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]").

Under Ohio law, a defendant may not raise a claim in post-conviction proceedings that could have been raised on direct appeal but was not. *Williams*, 460 F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). "Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted." *Id.*

10

Respondent contends that Petitioner's voir dire claim is procedurally defaulted. Petitioner contends that his affidavit, which he provided with his post-conviction petition "was not, and could not have been, part of the record on appeal, [and] could not have been presented to the court of appeals." (Doc. 10, at 15). Therefore, he contends the state court incorrectly applied *res judicata*, and this claim should be reviewed *de novo*. *Id.* at 15-16. In that affidavit, Petitioner stated that after the original trial judge recused himself, and the case was assigned to a new judge:

> I advised Mr. Frenden that I was not comfortable waiving the jury under these circumstances, since my decision to waive had been based on the information he claimed he had received about Judge McClelland. Mr. Frenden informed me that we would have to waive a jury because he had not prepared for voir dire. Under these circumstances, I felt compelled to waive a jury. I would not have agreed to waive the jury had Mr. Frenden been prepared to conduct a voir dire.

(Ex. 27, Doc. 7-1, at 197-98).

Petitioner raised this claim to the state trial court, which denied it. *See* Ex. 30, Doc. 7-1, at 234 (summary denial); Ex. 36-37, Doc. 7-1, at 289-96 (findings of fact and conclusions of law). The appellate court found this claim barred by *res judicata*, explaining:

> {¶ 13} In the instant case, all of Quinones's postconviction arguments going to the effectiveness of counsel, except the "voir dire" argument, are based upon issues that were in fact previously litigated in *Quinones I*. Therefore, these issues are barred by res judicata.

> {¶ 14} Likewise, the "voir dire argument" is also barred by res judicata. Quinones introduced the "voir dire argument" for the first time in his petition for postconviction relief. In support of this argument, Quinones averred that defense counsel insisted on going forward with a bench trial, after the original trial judge recused himself, because defense counsel was unprepared for voir dire. This evidence, however, is insufficient to demonstrate defense counsel's ineffectiveness. It is not new evidence demonstrating how he was prejudiced by defense counsel. Moreover, Quinones should have presented this evidence to this court in his direct appeal. It was discussed on the record by the trial court on the scheduled trial date, November 18, 2013. The trial court stated:

>> I informed the parties [that I don't feel comfortable acting in terms of a bench trial] and after some consideration a determination was

11

made to keep the case here and to go with a jury trial and I'm comfortable with doing that.

Because of it converting to a jury trial and the fact that counsel had not prepared for voir dire, we had a discussion in chambers. My suggestion was we would start at 1:30; I would conduct my portion of the voir dire, the prosecution would do their portion of the voir dire, and if they did not feel they were adequately prepared to conduct their portion of the voir dire, we would recess for the day and allow them to come back and continue tomorrow morning at nine.

So, it now is scheduled for us to commence the jury selection process at 1:30 this afternoon.

{¶ 15} Thereafter, the court took a recess. When the matter was back on the record, Quinones informed the new trial judge that he wished to proceed with a bench trial.

{¶ 16} Having failed to provide any evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that Quinones was prejudiced by defense counsel's ineffectiveness, the trial court did not abuse its discretion when it dismissed the petition without a hearing.

*Quinones II*, 2016 WL 5888174, at *4-5. The state court thus found that Petitioner had failed to present new evidence sufficient to overcome the *res judicata* bar.

Ohio's *res judicata* rule bars a defendant from raising in post-conviction review a claim that was or could have been raised on direct appeal. *See State v. Perry,* 10 Ohio St. 2d 175, 180 (1967). This rule is an "independent and adequate state ground" that bars habeas review. *See Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001). However, if a defendant "had no means of asserting the constitutional claim . . . until his discovery, after the judgment of conviction, of the factual basis for asserting that claim," then the claim "was not one that could have been raised . . . before the judgment of conviction, and hence could not reasonably be said to have been . . . waived." *Perry,* 10 Ohio St. 2d at 179. A petitioner may therefore present extra-record evidence in support of a claim on post-conviction review and have the post-conviction review court reach the merits of that claim. *See, e.g., State v. Smith,* 17 Ohio St. 3d 98, 101 n.1 (1985).

12

Not just any new evidence will do. Extra-record evidence must (1) "demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record" and must be "competent, relevant, and material," and (2) meet a "threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *State v. Lawson,* 103 Ohio App. 3d 307, 315 (1995) (quotation marks and citation omitted). However, "an incorrect application of a state *res judicata* rule does not constitute reliance on an adequate and independent state ground" that bars federal habeas review. *Wogenstahl v. Mitchell,* 668 F.3d 307, 341 (6th Cir. 2012). And in the absence of an alternative ruling by the state court on the merits of a claim, if this Court determines the state court incorrectly applied *res judicata*, it may review the merits of the claim *de novo*. *See Post v. Bradshaw,* 621 F.3d 406, 424 (6th Cir. 2010).

Petitioner's claim is that he unwillingly consented to a bench trial based on the fact that his counsel was not prepared for the voir dire process required for a jury trial. Counsel's unpreparedness is the alleged ineffectiveness. As the state court correctly pointed out, counsel's lack of preparation for voir dire "was discussed on the record by the trial court". *Quinones II*, 2016 WL 5888174, at *4. Further, "[w]hen the matter was back on the record, [Petitioner] informed the new trial judge that he wished to proceed with a bench trial." *Id.*; *see also* Tr. Vol. 6, at 981-94, Doc. 7-2, at 4-7 (colloquy regarding jury trial waiver). Thus, Petitioner could have raised this ineffectiveness claim on direct appeal. The undersigned therefore finds no error in the state court's application of *res judicata*. Petitioner presents no assertion of cause and prejudice or a miscarriage of justice to overcome this default. Therefore, the undersigned recommends the Court find this sub-claim procedurally defaulted.

<u>Merits Review</u>

Petitioner's remaining claims of ineffective assistance of counsel were exhausted through the state court process on direct appeal, and are thus preserved for federal habeas review. *See* Ex. 17, Doc. 7-1, at 60-83; Ex. 24, Doc. 7-1, at 136-51). Respondent contends, however, that these fail on AEDPA merits review. The undersigned agrees.

To obtain relief on an ineffective assistance of counsel claim requires Petitioner to clear a doubly high hurdle. Ineffective assistance of counsel claims are first governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "In *Strickland,* [the Supreme] Court made clear that 'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 689) (second alteration in original). "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686) (alteration and emphasis in *Cullen*)).

*Strickland* recognized the "tempt[ation] for a defendant to second-guess counsel's assistance or adverse sentence," 466 U.S. at 689, and therefore the Supreme Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.* at 690, and imposes a two-prong framework for a defendant to overcome this strong presumption. Under *Strickland*'s first prong, Petitioner must demonstrate that "counsel's representation was deficient in that it 'fell below an objective standard of reasonableness.'" *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland*, 466 U.S. at 688). In assessing whether counsel's performance was

deficient, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation marks omitted). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

Decisions as to what evidence to present, whether to call certain witnesses, and how to conduct cross-examination are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture,* 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002). In sum, when making all strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores–Ortega,* 528 U.S. 470, 481 (2000); *see also Wiggins v. Smith,* 539 U.S. 510, 522–23 (2003).

Further, it is not enough to show only that counsel's performance was deficient. *Strickland*'s second prong requires Petitioner to show "prejudice," that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citation omitted). And "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* at 104 (quoting *Strickland*, 466 U.S. at 687).

Layered on top of this, the standard on habeas review further "severely constrains" the Court's analysis. *See Smith v. Anderson*, 632 F.3d 277, 281 (6th Cir. 2011). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105. And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* Because § 2254(d)(1) of AEDPA limits the circumstances in which federal courts may grant a writ of habeas corpus, the Supreme Court has described habeas review of state court adjudications of ineffective assistance of counsel claims as "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable, the state court's decision must have been more than incorrect or erroneous . . . The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520 (citations omitted).

In short, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105 (emphasis added); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) ("This 'doubly deferential' standard of review . . . gives both the state court and the defense attorney the benefit of the doubt.") (internal citation omitted); *Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015) ("The question before us is whether any 'fairminded jurist' could agree with the state courts that [trial counsel] satisfied the reasonableness standard set forth in *Strickland*.") (quoting *Harrington*, 562 U.S. at 101).

16

As then-District Court Judge (now Sixth Circuit Court Judge) Amul R. Thapar described this doubly deferential standard:

> Imagine every judge in the country picked up the state-court decision and that each of them is reasonable. If none could possibly disagree that the state court had misapplied Supreme Court law, the decision is unreasonable. Then, and only then, does a petitioner have a claim under AEDPA's third prong. But if some of those judges *could* disagree—in other words, if some could find the state court's reasoning reasonable—the petition[er] does not have a claim.

*Sanders v. White*, 2017 WL 2129305, at *2 (E.D. Ky.) (emphasis in original).

It is pursuant to this "imposing standard", *Caudill v. Conover*, 881 F.3d 454, 462 (6th Cir. 2018), that this Court reviews Petitioner's claims. Petitioner raises to this Court the same claims of ineffective assistance he presented to the state courts. He contends that these errors amounted to trial counsel acting as "worse than a placeholder" and that he did "active damage to his client's defense." (Doc. 10, at 7). The state appellate court summarized these arguments that "counsel was deficient in three different respects", specifically that he "used improper strategy and tactics, allowed impermissible evidence to be admitted at trial, and failed to adequately prepare for trial", as follows:

> {¶ 21} Initially, appellant argues that defense counsel's strategy was "doomed" in "the most offensive way possible." Here, the record reflects that defense counsel attempted to discredit S.H.'s testimony by suggesting that it was "anatomically impossible" for appellant to anally rape S.H. without causing her serious physical injuries. Appellant's defense was centered on his past sexual partners, who were called to testify about appellant's anatomy and sexual history. Appellant contends that defense counsel's theory of defense was irrelevant and constituted a misunderstanding of the law.

> {¶ 22} Further, appellant challenges defense counsel's decision to elicit testimony during the cross-examination of Heather and social worker Ruiz relating to whether they believed S.H.'s allegations and asking Det. O'Connell if he "form[ed] an opinion as to [appellant's] guilt." Appellant argues that defense counsel effectively bolstered the credibility of S.H. and prejudiced his own client's defense.

> {¶ 23} Next, appellant argues that defense counsel failed to object to numerous instances of inadmissible evidence. Specifically, he contends that defense counsel

17

failed to object to Heather's testimony concerning their "terrible marriage" or to Det. O'Connell's testimony that appellant was "very evasive" during his initial interview.

{¶ 24} Finally, appellant argues that defense counsel's conduct throughout the trial placed his level of preparation into question.

*Quinones I*, 2014 WL 7186212, at *3-4.

In its analysis, the state court set forth the *Strickland* standard, and further noted:

{¶ 19} Generally, decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers. *State v. Gau*, 11th Dist. Ashtabula No.2005–A–0082, 2006–Ohio–6531, ¶ 35, citing *Strickland*. Furthermore, "in a bench trial, the trial court is presumed to have relied only upon admissible evidence." *State v. Warren*, 8th Dist. Cuyahoga No. 83823, 2004–Ohio–5599, ¶ 47, citing *State v. Davis*, 63 Ohio St.3d 44, 584 N.E.2d 1192 (1992). *See also State v. Turner*, 10th Dist. Franklin No. 04AP–364, 2004–Ohio–6609, ¶ 24.

*Id.* at *3.

Applying the *Strickland* standard to Petitioner's arguments, the state court explained:

{¶ 25} After a careful review of the record in its entirety, we find that appellant has not demonstrated a "reasonable probability" that the outcome of the proceedings would have been different but for defense counsel's deficient performance. We recognize that defense counsel's line of questioning relating to appellant's sex life with his past partners may not have been relevant. Further, the record supports appellant's position that defense counsel should not have raised questions concerning S.H.'s credibility during cross-examination and demonstrated a lack of preparation prior to calling appellant to the stand. Nevertheless, we will ordinarily refrain from second-guessing strategic decisions counsel makes at trial, even where counsel's trial strategy was questionable. *See State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014–Ohio–1621, ¶ 33 ("the scope of cross-examination falls within the realm of trial strategy and, therefore, debatable trial tactics do not establish ineffective assistance of counsel"), citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶ 26} Moreover, we must presume that the trial court, serving as the trier of fact in a bench trial, did not consider such improper evidence. *In re B.P.K.*, 10th Dist. Franklin No. 12AP–343, 2012–Ohio–6166, ¶ 19. In fact, the trial court emphasized this point, stating:

> I want the reviewing court to realize that certain testimony, and particularly the testimony that was elicited by the defense on cross-

18

> examination which was opinion testimony by the detective in the case about whether he believed the defendant was telling the truth during the course of his statement, the Court did not consider the opinion testimony in reaching its verdict, or anyone else.
>
> {¶ 27} In our view, the perceived errors in defense counsel's performance did not impact the sufficiency of the state's evidence. As noted by the trial court at the sentencing hearing, S.H.'s testimony was consistent throughout the proceedings despite defense counsel's attempts to impeach her credibility and time line. (Tr. 1620–22.) As such, appellant's ineffective assistance of counsel arguments fail the second prong in *Strickland, supra.*

*Id.* at *3-4.

The undersigned cannot say that this decision – finding no *Strickland* prejudice – is unreasonable. As the Supreme Court has stated, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 686) (alteration and emphasis in *Cullen*)). Although Petitioner presents a compelling argument that counsel's performance was deficient (indeed, at times, alarmingly so), he has not shown that the basis for the state court's denial of his ineffectiveness claim – the prejudice prong – was objectively unreasonable.

Petitioner argues the fact that the first trial resulted in a deadlocked jury demonstrates a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *See* Doc. 10, at 17 ("The best indication that the trial was eminently winnable was the fact that a jury heard the same evidence from the same witnesses, and evenly deadlocked on the issue of guilt."). But the state court found that (1) the trial court expressly made note that it did not consider the inadmissible evidence elicited by defense counsel; and (2) the victim's testimony remained consistent despite defense counsel's attempts to impeach her testimony. *Quinones I*, 2014 WL 7186212, at *3- 4. Again, this Court's review is confined to "whether there is any reasonable argument", *Harrington*, 562 U.S. at 105, to support the state court's finding of no prejudice, that is that

Petitioner had not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different", *Strickland*, 466 U.S. at 694. The state court determination provides that reasonable argument. As the state court found, a judge in a bench trial is presumed not to rely on inadmissible evidence. *Quinones I*, 2014 WL 7186212, at *3 (citing *State v. Warren*, 2004 WL 2365906, at *6 (Ohio Ct. App. 2004)); *see also Harris v. Rivera*, 454 U.S. 339, 346 (1981) (per curiam) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *United States v. Joseph*, 781 F.2d 549, 552 (6th Cir. 1986) (presumption in federal criminal bench trial is that trial judge only considered properly admitted evidence); *Brown v. Pitcher*, 19 F. App'x 154, 157 (6th Cir. 2001) (applying the rule in a habeas case). And the state court reasonably relied on the strength of the victim's testimony to find that Petitioner had not shown a reasonable probability of a different outcome without counsel's errors.

It is worth repeating that this Court is not confronted with this ineffectiveness issue in the first instance, but rather though the doubly-deferential lens of AEDPA review. Reasonable jurists could agree with the state court's determination that Petitioner did not show a reasonable probability that but for counsel's errors, the result of his trial would have been different. Petitioner has not shown that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. For this reason, the undersigned recommends the Petition be denied.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).