UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andrew Quinones,                                                       Case No. 1:18-cv-1492

              Petitioner,

      v.                                                      MEMORANDUM OPINION
                                                             AND ORDER

David W. Gray, Warden,

              Respondent.

## I. INTRODUCTION

Petitioner Andrew Quinones, through counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, concerning his conviction in the Cuyahoga County, Ohio Court of Common Pleas on charges of rape, kidnapping, and gross sexual imposition. (Doc. No. 1). Magistrate Judge James R. Knepp, II, reviewed the petition as well as the related briefing pursuant to Local Rule 72.2(b)(2) and recommends I deny Quinones' petition. (Doc. No. 11). Quinones filed objections to Judge Knepp's Report and Recommendation. (Doc. No. 14). For the reasons stated below, I overrule Quinones' objections and adopt Judge Knepp's Report and Recommendation.

## II. BACKGROUND

In December 2012, a Cuyahoga County grand jury indicted Quinones on four counts of kidnapping (with sexual motivation specification), three counts of rape of a child under age thirteen, one count of gross sexual imposition on a child under age thirteen, and one count of pandering obscenity involving a minor. The charges arose from allegations made by S.H., the younger sister of

Quinones' then-wife, and involved conduct occurring in 2004 and 2005. *See State v. Quinones*, 2014-Ohio-5544, 2014 WL 7186212 (Ohio Ct. App. Dec. 18, 2014) ("*Quinones I*").

Quinones was appointed an attorney and his case proceeded to a jury trial in May 2013. The jury was unable to reach a verdict, however, and the trial court declared a hung jury on May 13, 2013. (Doc. No. 7-1 at 16). Quinones' appointed attorney was permitted to withdraw, and the court appointed a new attorney. (*Id.*). Quinones subsequently retained another attorney, John Frenden, to represent him. (Doc. No. 7-1 at 180).

Quinones then decided to waive his right to a jury trial and proceed with a bench trial instead. The judge who had presided over the case up until that point recused himself, because the judge already had heard all of the evidence during the first trial, and the case was reassigned to Judge Michael Donnelly. (*Id.* at 181). Judge Donnelly accepted Quinones' jury waiver and the second trial began on November 19, 2013. Judge Donnelly denied Quinones' motion for judgment of acquittal[1] at the close of the prosecution's case and, after hearing the evidence of the defense witnesses (including Quinones himself) and the arguments of counsel, found Quinones guilty on all counts. Quinones was sentenced to the maximum term of five years on the gross sexual imposition count and ten years on the rape counts, as well as a mandatory term of 10 years to life in prison on the kidnapping count, with all sentenced to run concurrently. (*Id.* at 47).

Quinones, through new counsel, filed a notice of appeal, arguing he received ineffective assistance of counsel. (Doc. No. 7-1 at 52). On December 18, 2014, the Eighth District Court of Appeals denied his appeal, concluding any deficiencies in Frenden's performance did not result in

---

[1] Frenden made "a motion notwithstanding the verdict." (Doc. No. 7-3 at 149). Judge Donnelly corrected Frenden and instructed the prosecution to respond to the motion as one for acquittal under Ohio Criminal Rule 29. (*Id.* at 150-51).

prejudice to Quinones because those deficiencies "did not impact the sufficiency of the state's evidence." *Quinones I*, 2014 WL 7186212, at *4.

On August 29, 2014, while his appeal was pending, Quinones filed a petition for post-conviction relief before Judge Donnelly. (Doc. No. 7-1 at 177-95). Quinones again argued he had received constitutionally-ineffective assistance of counsel, but in an affidavit filed along with his motion he raised a new argument, claiming he agreed to waive a jury trial only because Frenden told him he "had not prepared for voir dire." (*Id.* at 197-98). Judge Donnelly denied Quinones' motion after concluding his claims were barred by the doctrine of res judicata. (*Id.* at 293-96). Judge Donnelly also found the affidavit was self-serving and unsupported by any evidence from the record. (*Id.* at 294).

Quinones also appealed this decision. The Cuyahoga County Public Defender's Office was appointed to represent him during this appeal. (Doc. No. 7-1 at 234). Quinones argued the trial court violated his right to due process by refusing to hold a hearing on his motion for post-conviction relief and denying it as barred by res judicata. The Eighth District Court of Appeals rejected his arguments, concluding his claims were barred by res judicata. *State v. Quinones*, 2016-Ohio-7225, 2016 WL 5888174 (Ohio Ct. App. Oct. 6, 2016) ("*Quinones II*"). Specifically, it held that all of his postconviction arguments going to the effectiveness of counsel, except for his voir-dire argument, were barred because they were litigated in his direct appeal. *Id.* at *4. It then explained the voir-dire argument was barred by res judicata as well because the evidence contained in Quinones' affidavit was not new and could have been raised during his direct appeal. *Id.*

The Supreme Court of Ohio declined to accept jurisdiction of either of Quinones' appeals. Quinones then filed a timely § 2254 petition.

3

Quinones does not object to Judge Knepp's description of the factual and procedural background of his state court proceedings. Therefore, I adopt those sections of the Report and Recommendation in full. (Doc. No. 11 at 2-7).

### III. STANDARD

Once a magistrate judge has filed a report and recommendation, a party to the litigation may "serve and file written objections" to the magistrate judge's proposed findings and recommendations, within 14 days of being served with a copy. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Written objections "provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately' . . . [and] 'to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute.'" *Kelly v. Withrow*, 25 F.3d 363, 365 (6th Cir. 1994) (quoting U*nited States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981) and *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). A district court must conduct a *de novo* review only of the portions of the magistrate judge's findings and recommendations to which a party has made a specific objection. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

### IV. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits the issuance of a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). "The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(e)(1)).

4

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Quinones presents the following ground for relief:

Trial counsel's incompetent performance on Mr. Quinones' behalf was substandard, was reasonably likely to have compromised the outcome of his case, and violated his right to effective assistance of counsel provided under the Constitution's Sixth Amendment.

(Doc. No. 1-1 at 5).

Quinones contends (a) Frenden's strategy and tactics were poor; (b) he failed to object to improper, unreliable, and prejudicial evidence; and (c) he was unprepared for trial, including voir dire, resulting in Quinones' waiver of his right to a jury trial due to Frenden's lack of preparation. (*Id.* at 6-12). Judge Knepp recommends I conclude Quinones' strategy-and-tactics and failure-to-object claims fail on their merits and that his voir-dire claim is procedurally defaulted. (Doc. No. 11 at 9). Quinones objects to Judge Knepp's recommendations.

As an initial matter, Quinones argues Frenden's "performance was *so deficient* that the trial lost its character as a confrontation between adversaries . . . ." (Doc. No. 14 at 12) (emphasis in original); (*see also id.* at 11 (citing *United States v. Cronic*, 466 U.S. 648, 656-57 (1984)). In *Cronic*, the Supreme Court "identified three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Bell v. Cone*, 535 U.S. 685, 695 (2002) (quoting *Cronic*, 466 U.S. at 658-59). One of those situations arises "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659.

*Cronic*, however, does not create a presumption of prejudice in this case. To fall within the *Cronic* framework, "an attorney's failure to test the prosecutor's case . . . must be complete." *Bell*, 535 U.S. at 697. While Quinones argues he would have been better off if Frenden had done nothing at all, (Doc. No. 14 at 12), he implicitly acknowledges Frenden did not fail to oppose the

5

prosecution "as a whole." *Bell*, 535 U.S. at 697.  This moves the analysis of Quinones' ineffective assistance claim from *Cronic* to *Strickland v. Washington*.  *See Bell*, 535 U.S.. at 697-98.

### 1. Deficient Performance of Counsel

A habeas petitioner must show "his counsel's performance was deficient and that it prejudiced him" in order to prevail on an ineffective assistance of counsel claim.  *Nichols v. Heidle*, 725 F.3d 516, 539 (6th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient performance means that 'counsel's representation fell below an objective standard of reasonableness[,]' [while p]rejudice means 'there is a reasonable probability that, but for counsel's unprofessional errors [i.e., deficient performance], the result of the proceeding would have been different.'" *Nichols*, 725 F.3d at 539 (quoting *Strickland*, 466 U.S. at 688, 694)).

When asserting an ineffective-assistance claim in a habeas petition, the petitioner must show "the state court's rejection of that claim was 'contrary to, or involved an unreasonable application of' *Strickland*, or rested 'on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Nichols*, 725 F.3d at 540 (quoting 28 U.S.C. § 2254(d)).  Thus, the AEDPA mandates that a habeas court's review of the state court's ineffective-assistance analysis is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citations omitted).

The Eighth District Court of Appeals summarized Quinones' complaints about Frenden's performance:

> Initially, appellant argues that defense counsel's strategy was "doomed" in "the most offensive way possible."  Here, the record reflects that defense counsel attempted to discredit S.H.'s testimony by suggesting that it was "anatomically impossible" for appellant to anally rape S.H. without causing her serious physical injuries. Appellant's defense was centered on his past sexual partners, who were called to testify about appellant's anatomy and sexual history. . . .
>
> Further, appellant challenges defense counsel's decision to elicit testimony during the cross-examination of Heather [Hamar, Quinones' ex-wife] and social worker [Devon Sipes] Ruiz relating to whether they believed S.H.'s allegations and asking Det[ective Brian] O'Connell if he "form[ed] an opinion as to [appellant's] guilt."  Appellant

6

>argues that defense counsel effectively bolstered the credibility of S.H. and prejudiced his own client's defense.
>
>Next, appellant argues that defense counsel failed to object to numerous instances of inadmissible evidence. Specifically, he contends that defense counsel failed to object to Heather's testimony concerning their "terrible marriage" or to Det. O'Connell's testimony that appellant was "very evasive" during his initial interview.
>
>Finally, appellant argues that defense counsel's conduct throughout the trial placed his level of preparation into question.

*Quinones I*, 2014 WL 7186212, at *3-4.

There can be little debate that Frenden's performance fell below an objective standard of reasonableness. His defense strategy is a sufficient example, though certainly not the only one.

After establishing through earlier witnesses that S.H. had not reported any physical injuries from her assaults, Frenden asked Heather about whether she and Quinones had anal sex while they were dating and after they married, whether it was painful, and whether it caused Heather to bleed. (Doc. No. 7-2 at 132-33). Frenden's questions drew two objections from the prosecution and led to a side-bar conference in which Judge Donnelly pointed out Frenden already had established the absence of medical evidence through prior witnesses and ask Frenden "Why are you doing this? If anything, you have asked about a type of sexual behavior that is consistent and brought out through this witness [behavior] that is consistent with what the victim is alleging." (*Id.* at 134-35).

Frenden, however, continued on. He subsequently called as a witness Lena Thorison, who previously had a sexual relationship with Quinones, for the sole purpose of having her testify she and Quinones did not have oral or anal sex, and that Quinones' penis was too large to have anal sex without lube because it would be too painful. (Doc. No. 7-4 at 108-114); (*id.* at 113 (Frenden stating Thorison "was about to say it could not happen . . . [because] it's just too big to like put in there

7

without lube . . . .)). After the prosecution's second objection to this line of questioning,[2] Judge Donnelly stated he did not "know how to place this on the record to adequately preserve the absolute bafflement from the Court, as well as the physical reaction of the prosecutors, in response to this questioning, but it needs to be preserved." (*Id.* at 110-11).

Undeterred, Frenden called Quinones' finance, Christy Harry, as a witness to ask her about Quinones' penis and his "sexual habits," and to testify that she and Quinones attempted to have anal sex but could not because it was too painful and caused her to bleed. (Doc. No. 7-4 at 125-27). Judge Donnelly reiterated to Frenden his disbelief that Frenden "brought out through testimony that would never have been allowed to be introduced by the State that your client has a proclivity for anal sex, which is consistent with what the victim testified to in her testimony . . . ." (*Id.* at 132).

The trial transcript contains numerous examples of Frenden's careless questions while examining witnesses as well as his failure to object to certain testimony from witnesses. Further, the record is not clear regarding whether Frenden ever advised Quinones concerning his testimony or prepared him to take the witness stand. (Doc. No. 7-4 at 117-21). As I noted above, Quinones also claims Frenden told him he needed to waive a jury trial because Frenden was not prepared for jury selection. (Doc. No. 7-1 at 197-98).

A criminal defendant's right to counsel, and the expectation that the attorney will zealously advocate for the defendant within the bounds of the law, is so well ingrained in American legal and popular culture as perhaps to be taken for granted. While any attorney may and does make mistakes, society's expectation that a criminal defense attorney will adequately and appropriately fulfill the attorney's role is commonly met. Breathtaking incompetence of the sort Quinones was

---

[2] One of Quinones' later attorneys described Frenden's questions as "[t]he suicidal pursuit of [his defense] strategy." (Doc. No. 7-1 at 185).

subjected to is exceedingly rare, though its scarcity makes it no less disturbing for either the client or the legal system.

### 2. Prejudice

Frenden's deficient performance, however, is not sufficient to meet the *Strickland* test on its own.  In order to establish his claim, Quinones must "affirmatively prove" that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 693-94.  Moreover, Quinones also must show that the appellate court's rejection of his claims involved the unreasonable application of the *Strickland* standard.  *Nichols*, 725 F.3d at 540.  He has not met this standard.

Quinones begins his objections by arguing the state courts erroneously denied his motion for post-conviction relief, which deprived him of the opportunity to develop the record more fully concerning the alleged prejudice he suffered from Frenden's deficient performance.  He contends I should conclude his voir-dire claim was not actually procedurally defaulted and that that claim shows he was prejudiced by Frenden's conduct.

Judge Donnelly concluded Quinones "entered a knowing, intelligent, and voluntary waiver of his [right to a] jury trial," and that his claims were barred by res judicata.  (Doc. No. 7-1 at 295-96).  The Eighth District Court of Appeals affirmed, finding no error in Judge Donnelly's refusal to grant a hearing or his res judicata holding.  *Quinones II*, 2016 WL 5888174, at *4-5.

The procedural default rule bars a federal habeas petitioner's claims if (1) the state court declined to consider the merits of an issue because the habeas petitioner failed to comply with state procedural rules, or (2) if the petitioner failed to fully pursue a claim through the state's "ordinary appellate review procedures" and now no longer is able to raise the claim, unless the petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice would occur if the claim is not reviewed.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)

9

(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)). The procedural default rule prohibits a habeas court from considering a federal claim if the last reasoned state court decision in the case "clearly and expressly states that [the decision] rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (citations and internal quotation marks omitted).

Quinones' voir-dire claim is barred by the procedural default rule. The appellate court concluded his claim was barred by the doctrine of res judicata because Quinones could have, but failed, to raise it during his direct appeal. *See Quinones II*, 2016 WL 5888174, at *4. Further, the application of the res judicata doctrine "is an adequate and independent state ground for barring habeas review of constitutional claims." *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) (citation omitted).

Thus, federal habeas review of this claim is barred unless Quinones "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Quinones argues the state court incorrectly applied the res judicata doctrine, but issues of state law, like res judicata, are not cognizable in federal habeas proceedings. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Moreover, Quinones' argument that his affidavit was new evidence he could not have raised in his direct appeal is not persuasive. As the appellate court noted, the original trial judge discussed the issue of voir dire preparation on the record on the scheduled trial date. *Quinones II*, 2016 WL 5888174, at *4. The original judge stated:

> "[b]ecause of it converting to a jury trial and the fact that counsel had not prepared for voir dire, . . . [m]y suggestion was we would start at 1:30 . . . and if they did not feel they were adequately prepared to conduct their portion of the voir dire, we would recess for the day and allow them to . . . continue tomorrow morning . . . ."

*Id.*

The only allegedly new evidence Quinones offered was his contention he would not have waived his right to a jury if Frenden had been prepared. This contention did not require "significant supplementation of the trial court record," *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001), and Quinones does not explain why he did not include this argument in his direct appeal.

Quinones was represented by the same attorney in his direct appeal and his trial-court post-conviction proceedings, and he has not asserted a claim for ineffective assistance of appellate counsel. Quinones has not identified "some objective factor external to the defense" which prevented him from asserting his voir-dire claim during his direct appeal proceedings. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Because Quinones has not established cause to excuse his procedural default, I need not address the issue of prejudice with regard to the procedural default of his voir-dire claim. *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000).

Lastly, while Quinones contends that, "[h]ad trial counsel been prepared, the matter would have proceeded to a jury trial and there, second time around he may well have prevailed," (Doc. No. 14 at 7), this is not sufficient to demonstrate that review of his voir-dire claim is necessary to avoid a miscarriage of justice, as he has not submitted "new and reliable evidence of his actual innocence." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003) (citing *Schlup v. Delo,* 513 U.S. 298 (1995)). Therefore, I conclude Quinones' voir-dire claim is barred by the procedural default rule.

Quinones also objects to Judge Knepp's recommendations as to his claims arising from Frenden's poor strategical decisions, his failure to object to inadmissible and prejudicial evidence, his misunderstanding of the law, and his offering of evidence which helped the prosecution's case, rather than Quinones'. (*See* Doc. No. 11 at 9). Specifically, Quinones alleges he was prejudiced because Judge Donnelly improperly was exposed to "*all* the irrelevant prejudicial evidence Frenden

11

failed to object to or managed to extract from witnesses during his botched cross-examinations . . . ." (Doc. No. 14 at 10 (emphasis in original)).[3] This argument is not persuasive.

"In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." *Harris v. Rivera*, 454 U.S. 339, 346 (1981). While Quinones argues Judge Donnelly only said he did not consider Detective O'Connell's opinion testimony and therefore he must have considered all of the other improper testimony and evidence, (Doc. No. 14 at 10), the law did not require him to say even that. Quinones has not identified any basis to rebut "the well-established presumption that the judge adhered to basic rules of procedure." *Harris*, 454 U.S. at 347.

Moreover, the transcript reveals Judge Donnelly consistently was aware of the proper scope of his role as the finder of fact. (*See, e.g.,* Doc. No. 7-2 at 181 (dismissing evidence that Quinones possibly was not truthful on his taxes as "some issue that's not really relevant to the charges at hand"); (Doc. No. 7-4 at 134-35 (rejecting evidence concerning the personal beliefs of non-testifying police detective about whether or not Quinones had engaged in the conduct alleged by the victim as irrelevant)).

Therefore, I overrule Quinones' objection. I conclude the Eighth District Court of Appeals' rejection of his claims was not an unreasonable application of the *Strickland* standard and deny his ineffective-assistance claim.

---

[3] Quinones also argues I should "defer to contemporaneous findings" made by the Supreme Court of Ohio when it permanently disbarred Frenden for neglecting his clients' legal matters and failing to provide them with competent representation. (Doc. No. 14 at 2-3). Whether or not I am permitted to consider this outside-of-the-record findings, they do not establish that Quinones was prejudiced by Frenden's deficient performance.

### B. CERTIFICATE OF APPEALABILITY

A habeas corpus petitioner is not entitled to a certificate of appealability as a matter of right but must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner need not demonstrate he should prevail on the merits. Rather, a petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

Quinones' petition has not met this standard, as reasonable jurists would agree he has not demonstrated he was prejudiced by his attorney's deficient performance. For the reasons set forth in this decision, I certify there is no basis on which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

### V. CONCLUSION

For the reasons stated above, I overrule Quinones' objections, (Doc. No. 14), to Judge Knepp's Report and Recommendation, (Doc. No. 11), and adopt the Report and Recommendation in full. I conclude Quinones' ground for relief is procedurally defaulted in part and that the remainder fails on the merits.

I also conclude Quinones fails to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(b)(2), and decline to issue a certificate of appealability.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge